**Anne deBRUIN, Plaintiff,**

v.

**ANDROMEDA BROADCASTING SYSTEMS, INC., a Nevada Corporation, John Wardy, Richard A. Wardy, Charles R. Wardy, Josephine Sandoval, as Directors and Officers of Andromeda Broadcasting Systems, Inc., and William Sowers, Defendants.**

**No. CIV–LV–76–4 HEC.**

United States District Court, D. Nevada, Las Vegas Division.

March 5, 1979.

Jones, Jones, Bell, Close & Brown, Las Vegas, Nev., and Robert D. Merrill, Salt Lake City, Utah, for plaintiff. ·

Perry & Clary, and Patrick C. Clary, Las Vegas, Nev., for defendants.

## DECISION

CLAIBORNE, District Judge.

Plaintiff, Anne deBruin, brought this action against Defendant, William Sowers, for

violations of 15 U.S.C. §§ 77e, 77l and 78j. This Court has jurisdiction over the matter under 15 U.S.C. §§ 77v and 78aa. The cause came for trial before the Honorable Harry E. Claiborne on October 17, 1978. All of the trial and post-trial briefs having been filed, and the Court having considered the same, the Court now renders the following decision:

Plaintiff is currently a resident of Salt Lake City, Utah. She and her husband, Dr. Clayton deBruin, formerly resided in Las Vegas until 1972, during which time he was employed as an anesthesiologist by the Clark County Anesthesia Association (C.C.A.A.).

Defendant is currently a resident of Las Vegas, Nevada, and has been employed as officer manager of the C.C.A.A. since early 1972. Prior to that time, he was employed as a public accountant for Turner, Logan and Turner, and Alex C. Logan Company, both of which are certified public accountant firms in Las Vegas. While so employed, he worked on an account involving Andromeda Broadcasting System, Inc. (Andromeda); specifically, he prepared financial statements for Andromeda in or about 1968 under the supervision of a certified public accountant.

Defendant became acquainted with Plaintiff and her husband while Defendant was employed as a public accountant. Prior to the time of the within transactions, Defendant. performed various services for the deBruins: he prepared tax returns for the years 1970–1973; gave advice concerning insurance policies; procured a buyer, enabling the deBruins to sell their residence in Las Vegas; and arranged a $10,000 loan by the deBruins to a Dr. Swissman (Ex. 2).

After changing employment, Defendant kept in contact with John Wardy, President of Andromeda. Wardy requested Defendant to find some investors so that Andromeda could expand its operations by purchasing a radio station in Roswell, New Mexico. Wardy showed Defendant all of the documentation surrounding the purchase agreement and gave him copies of the same. Defendant has never been a shareholder, a director, or an officer of Andromeda, nor was he paid any compensation by Wardy or Andromeda for the procurement or attempted procurement of investors. Save and except the above-stated instances, Defendant has never been employed by or done favors for either Wardy or Andromeda.

At some time in 1974, during a telephone conversation between Plaintiff and Defendant, Plaintiff requested Defendant's advice concerning investments. Defendant recommended investment in Andromeda because of the purchase agreement concerning the New Mexico radio station and because, based on Defendant's employment experience, of his belief that the majority of Broadcasting corporations were profitable.

On or about April 13, 1974, Defendant traveled from Las Vegas to Salt Lake City, Utah, for the purpose of preparing Plaintiff's 1973 federal income tax return. During this meeting, Defendant stated that owning stock in Andromeda would be a good investment; that Plaintiff should receive approximately eight-to-ten percent per year return on her investment; that Andromeda was in the process of purchasing the New Mexico radio station; that she could invest $100/share up to 500 shares; and that John Wardy would have a majority interest in Andromeda. These representations were based upon information which Wardy had given to the Defendant.

On or about April 13, 1974, and at all times thereafter, Defendant knew, but did not disclose, the following facts to Plaintiff: that Andromeda had a past history of consistent, yearly net income losses; that Andromeda had never paid dividends, but instead had reinvested all profits; that Wardy had requested him to find new investors; and that Defendant had procured another investor, one Dr. Sprague, who invested $10,000 in Andromeda.

The above-stated events constitute the only times in which Defendant has become involved in any way with the sale of stock of any corporation to any individual.

Based on or substantially on Defendant's representations, Plaintiff furnished $31,500 as consideration for the purchase of 315 shares of Andromeda common stock on April 13, 1974 by way of personal check (Ex. 1). The source of funds for said check was Plaintiff's certificate of deposit account, and Plaintiff was told that she would forfeit $825.00 in interest because of the early withdrawal from said account. Based upon that representation, Plaintiff stopped payment on Ex. 1. Defendant subsequently telephoned Plaintiff upon learning of the "stop payment," discovered the situation, and represented to Plaintiff that if she would submit the check, Andromeda would pay her the sum of $825. Based upon that representation, Plaintiff resubmitted the check for $31,500. On August 20, 1974, Andromeda drew a check payable to Plaintiff in the amount of $825 (Ex. 3), but subsequently stopped payment on said check.

On or about February 5, 1975, Plaintiff received 315 shares of Andromeda stock. (Ex. 4 A–C).

Subsequent to April 13, 1974, Andromeda learned of misrepresentations made by the New Mexico radio station and, on that basis, rescinded the purchase agreement and initiated litigation against said station.

At no time did a registration statement or a prospectus exist with respect to any Andromeda securities, and the Defendant was aware of that fact at all relevant times.

Under § 77e(c), it is unlawful for any person to make use of interstate commerce to offer to sell securities unless a registration statement has been filed as to such securities. However, § 77d(1) states that the provisions of section 77e shall not apply to transactions by any person other than an issuer, underwriter or dealer. Thus, the issue before this Court is whether Sowers was an issuer, underwriter, or dealer with respect to the transactions of April 13, 1974.

15 U.S.C. § 77b contains the pertinent definitions:

". . . (4) The term 'issuer' means every person who issues or proposes to issue any security; . . .

"(11) The term 'underwriter' means any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking; . .

"(12) The term 'dealer' means any person who engages either for all or part of his time, directly or indirectly, as agent, broker, or principal, *in the business of* offering, buying, selling, or otherwise dealing or trading in securities issued by another person." (emphasis added).

■ Clearly, Defendant is not an "issuer" or "underwriter;" Andromeda was the issuer, and there was no underwriter in the case at bar. The issue is whether he is a "dealer" or, more specifically, whether he was in the business of offering, buying, selling, or otherwise dealing or trading in securities issued by another person. I hold that he is not a "dealer." Defendant is a public accountant/bookkeeper by profession, and the sales of Andromeda stock to Plaintiff and to Dr. Sprague constitute the only times he has become involved in the dealing or trading of any securities. It is well settled in a variety of legal contexts that a single and isolated transaction does not constitute "doing business" (13 Words and Phrases, "Doing Business," pp. 317–326), and this principle applies to the case at bar. Accordingly, Plaintiff cannot recover from Defendant under 15 U.S.C. § 77e.

■ Under § 77*l*, any person who offers or sells a security by use of any means or instrumentalities of interstate commerce, by means of an oral communication which includes an untrue statement of a material fact or omits to state a material fact, either of which he could have known in the exercise of reasonable care, shall be liable to the person purchasing such security from him. The issue before the Court is whether Defendant was an "offeror" or "seller" within the meaning of § 77*l*, given that he cannot

be held liable under § 77e. The general rule is that a right of action under § 77*l* is limited to a plaintiff's immediate seller; however, exceptions have been created and liability has attached to persons acting as the immediate seller's agent, to defendants who are alleged to be controlling persons of the immediate seller, and to those who have actively participated in the fraudulent sale, either as an aider and abettor or as a coconspirator. *Lorber v. Beebe*, 407 F.Supp. 279, 295–296 (S.D.N.Y.1976); *Newberg v. American Dryer Corp.*, 195 F.Supp. 345, 355–356 (E.D.Pa.1961).

■ There is no question that Sowers did not "control" Andromeda in any way at the time of the sale. There also is no question that he was not an "aider and abettor" or "coconspirator;" to be so held liable, Plaintiff would have to establish that Defendant had knowledge of a fraudulent scheme or acted so recklessly that knowledge may be imputed to him. *Stern v. American Bankshares Corp.*, 429 F.Supp. 818, 826 (E.D.Wis. 1977). There is no evidence before this Court that Sowers knew of a "fraudulent scheme," or even that a "fraudulent scheme" existed, with respect to the sale of Andromeda stock.

Thus, the issue is whether Defendant acted as the Plaintiff's agent, or as Andromeda's agent, or both, in connection with the April 13, 1974 transaction. The basic principles viz. existence of a principal-agent relationship are as follows:

> "Agency is ordinarily a relation created by agreement of the parties, and, as between principal and agent, an agency is created and authority is actually conferred very much as a contract is made, to the extent that the creation results from the agreement between the principal and agent that such a relation shall exist. As between the parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent shall act for

him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression either in words or conduct between them."

3 Am.Jur.2d "Agency," § 17 at p. 428.

■ Based on the evidence before the Court, I conclude that Sowers acted as Plaintiff's agent in obtaining the available information about Andromeda and advising her in that regard; this appears to have been the intent of the parties, given their long-standing "advisor-advisee" relationship. The evidence is inconclusive, at best, vis-a-vis an agency relationship between Andromeda (Wardy) and Sowers. It seems most likely that Defendant procured the investors as a favor to Wardy; he was not hired or otherwise compensated in any way for that purpose, and had no interest in Andromeda. This being the case, a strong presumption is created that the Defendant did not act as agent for Andromeda. See *Lynn v. Caraway*, 252 F.Supp. 858 (W.D.La. 1966), *affd.*, 379 F.2d 943 (5th Cir. 1967), *cert. denied*, 393 U.S. 951, 89 S.Ct. 373, 21 L.Ed.2d 362 (1968). Plaintiff did not overcome this presumption at trial; therefore, Defendant did not act as Andromeda's agent at any time, and consequently cannot be held liable under 15 U.S.C. § 77*l*.

■ Under § 78j, it is unlawful for any person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance. In order to recover under this section, a plaintiff must establish "scienter." That is, Plaintiff must show that Defendant employed some practice amounting to knowing or intentional misconduct designed to deceive or defraud; liability cannot be imposed for negligent conduct alone. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 1383–1385, 47 L.Ed.2d 668 (1976). It is clear that Defendant gave Plaintiff some bad advice, and it may even be true that he acted negligently. However, it is equally clear that the Defendant did not act knowingly or intentionally. He honestly believed that purchase of Andromeda stock would be a good "growth" investment. He did not know, nor could he have reasonably

foreseen, that Andromeda's purchase of a New Mexico radio station would not be finally consummated and certainly was not responsible for the cancellation of the transaction or any of the litigation pertaining thereto. In any event, Plaintiff has not established the requisite scienter, and therefore cannot recover under § 78j.

I further conclude: 1) Defendant Sowers cannot be held liable for $825.00 on a simple contract or estoppel theory; 2) Defendant did not act willfully, wantonly, in bad faith or maliciously at any relevant time. Therefore, Plaintiff cannot recover punitive damages.

Let judgment be entered for the Defendant and against the Plaintiff together with his said costs of suit.