Sylvia L. ADALMAN, et al.,

v.

BAKER, WATTS & CO., et al.

Civ. No. Y-83-2485.

United States District Court,
D. Maryland.

Dec. 13, 1984.

See also, D.C., 599 F.Supp. 752.

David Machanic, Fairfax, Va., John R. Erickson, Great Falls, Va., Frederick T. Spindel, Washington, D.C., David MacDonald, and Michael M. Cramer, Rockville, Md., for plaintiffs.

Andrew J. Graham, Baltimore, Md., Joseph D. Lonardo, Columbus, Ohio and Ellen Efros, Washington, D.C., for defendants and third-party plaintiffs.

Jervis S. Finney, and James B. Wieland, Baltimore, Md., for third-party defendants Julia M. Walsh & Sons, Inc., Henry T. Donaldson, and Thomas D. Walsh; Scott R. Schoenfeld, Washington, D.C., of counsel.

James W. Constable, David C. Daneker, Baltimore, Md., and David M. Doret, Philadelphia, Pa., for third-party defendant Elkins & Co.

J. Paul Mullen, Steven E. Leder, Baltimore, Md., Jay H. Calvert, and Eric Kraeutler, Philadelphia, Pa., for third-party defendant Beavers.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Defendants Baker, Watts & Company and BW Resources, Inc. have filed a motion for summary judgment, asking this Court to determine that, based on undisputed facts, plaintiffs' claims must fail as a matter of law. Defendants assert that the language of Section 12(2) of the 1933 Securities Act ("the 1933 Act") permits an action by the purchaser of securities only against his immediate seller, and that Baker, Watts was not a "seller" for purposes of § 12(2) liability. Defendants also assert that the Offering Memorandum was not materially omissive because Baker, Watts had no duty to disclose "soft" data and inchoate transactions, and because the omissions were not material as a matter of law. Finally, defendants argue that plaintiffs have not shown, and cannot show, a causal connection between the omissions and the plaintiffs' economic injury.

The Court finds, however, that Baker, Watts was a "seller" for purposes of § 12(2) liability and that Baker, Watts is thus not entitled to summary judgment on that issue. Regarding Baker, Watts' other arguments, there are important questions of fact which must be resolved before judgment may be entered. Defendants' motion for summary judgment is therefore denied.

Section 12(2) of the 1933 Act creates a private cause of action in favor of a purchaser against the enterprise which sells a security by means of a prospectus "which includes an untrue statement of material fact or omits to make the statements, in light of the circumstances under which they were made, not misleading...." The relief provided is rescission or rescissory

damages if the purchaser no longer owns the security.

Baker, Watts played a leading role in the sale of interests in Partners '81, the entity in which plaintiffs invested and which is the subject of this action. Baker, Watts acted as both a selling agent and as dealer-manager for Partners '81, but did not hold the securities in its own account before selling them to the plaintiffs. It argues that because it never owned the securities but merely aided in arranging their sale, it was not a seller and is therefore not liable for violations of § 12(2).

The Fourth Circuit has made it clear that the definition of "seller" for the purposes of § 12(2) includes "all persons whose actions are a substantial factor in causing a purchase of a security" or whose actions were the proximate cause of the purchase. *Lawler v. Gilliam,* 569 F.2d 1283, 1287 (4th Cir.1978). "It is unnecessary to show that the offeror or seller owns the security, for the definition encompasses any significant participation in the sale on behalf of the actual owner. Liability may be imposed on any person who actively solicits an order, participates in the negotiations, or arranges the sale." 569 F.2d at 1288. *See also Lewis v. Walston & Co.,* 487 F.2d 617, 621–22 (5th Cir.1973), *Hill York Corp. v. American International Franchises, Inc.,* 448 F.2d 680, 692–93 (5th Cir.1971), *In re Caesar's Palace Securities Litigation,* 360 F.Supp. 366, 378–83 (S.D.N.Y.1973). In *Johns Hopkins University v. Hutton,* 297 F.Supp. 1165 (D.Md.), *aff'd in relevant part,* 422 F.2d 1124 (4th Cir.1970), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974), this Court held that § 12(2) liability could be imposed not only upon principals, but also upon brokers when selling securities owned by other persons. Brokers have long been held liable as sellers under § 12(2), as have other parties responsible for bringing about sales of securities they themselves do not own. *Wassel v. Eglowsky,* 399 F.Supp. 1330, 1361 (D.Md.1975), *aff'd,* 542 F.2d 1235 (4th Cir.1976).

Defendants have argued that the Fourth Circuit interpretation is not correct in light of the legislative history of § 12(2). However, the legislative history to which defendants refer is the legislative history of an amendment of another section of the 1933 Act, many years after the passage of that Act. This argument is not convincing.

Defendants also assert that the Fourth Circuit interpretation is incorrect in light of recent Supreme Court pronouncements that the securities laws should be interpreted narrowly. The cases to which defendants refer, *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), and *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), concern the imposition of a private right of action where no private right had been conferred by Congress. The Supreme Court in these cases indicated that "Congress knew how to confer a private right of action when it wished to do so," 444 U.S. at 23, 100 S.Ct. at 243, 249, 13, and advised that the language of each statute should be the first step in determining the meaning of that statute. Here, the only issue before the Court is the definition of the term "seller." The Fourth Circuit has defined that term, not overly broadly, in a way that advances the aim of the 1933 Act to encourage appropriate disclosure by those who prepare disclosure materials. This Court will not depart from the determination that a "seller" is any person whose activities were a substantial factor in causing a purchase of securities.

Baker, Watts was a seller under that definition with regard to those plaintiffs who purchased directly from it. Baker, Watts has argued, however, that even under this expanded definition of "seller" it may not be held liable to those plaintiffs who purchased not from it but from the Walsh group or some other soliciting dealer. Baker, Watts was the exclusive agent for the purpose of finding investment subscribers, and organized the entire offering; it had total responsibility for selecting other soliciting dealers who were authorized to

offer and sell the units under a fee sharing arrangement with it. Baker, Watts alleges that those plaintiffs who purchased through other dealers were induced to buy, not by its actions, but by statements and negotiations made by the soliciting dealers. Whether its activities were a "substantial factor" in causing plaintiffs to purchase through dealers such as Walsh is a question of fact which remains in dispute. The extent of its involvement in those negotiations must await resolution by the trier of fact.

■ Baker, Watts has also asserted that the plaintiffs' claims must fail because it was not under a duty to disclose "soft" data or "inchoate transactions," and because details of the stock sale negotiations would not have been material to a reasonable investor. Its duty to disclose details of stock sale negotiations and disagreements concerning the management of Partners '81 is dependent on the definiteness of the negotiations and the disagreements during the offering period. While speculative possibilities need not be disclosed, active negotiations and serious disagreements surrounding the ownership and control of Superior, the general partner in Partners '81, may very well have been material to a reasonable investment decision. There are material facts in dispute concerning the definiteness of the stock sale negotiations during the offering period.

■ Furthermore, because the question of materiality rests upon the reaction of a "reasonable man," summary judgment is appropriate only where the facts in question are so obviously important, or unimportant, to the investor that reasonable minds could not differ as to their materiality, and the inferences to be drawn from the facts are "free from controversy." *Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir.1970). Such is not the case here, and the question of materiality is thus best reserved for a trier of fact.

■ Defendants contend, finally, that summary judgment dismissing all of plaintiffs' federal claims is appropriate because the allegedly omissive statements were not the cause of the plaintiffs' loss. As plaintiffs point out, under § 12(2) of the 1933 Act, causation is not required and the lack of such evidence would not necessitate the dismissal of this claim. As regards the § 10(b) claim, causation is a question of fact which remains in dispute at this time.

An examination of the record as submitted by the parties reveals that there are significant factual matters in dispute. Summary judgment is therefore inappropriate. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979). Defendants have also failed to establish that they are entitled to summary judgment as a matter of law. Their motion for summary judgment is therefore denied.