**BOZSI LIMITED PARTNERSHIP, et al., Plaintiffs,**

v.

**Frank B. LYNOTT, et al., Defendants.**

**No. 86 Civ. 2997 (RLC).**

United States District Court, S.D. New York.

Dec. 22, 1987.

Milberg Weiss Bershad Specthrie & Lerach, New York City (Richard M. Meyer, Michael C. Spencer, George A. Bauer, III, of counsel), and (Alan Schulman, Clyde A. Platt, San Diego, Cal., of counsel), for plaintiffs.

Cravath, Swaine & Moore, New York City (John R. Hupper, James Buchal and Rodman W. Benedict, Asst. Gen. Counsel,

Price Waterhouse, New York City, of counsel), for defendant Price Waterhouse.

Davis, Polk & Wardwell, New York City (Howard A. Ellins, Luigi L. De Ghenghi, of counsel), for defendant Ernst & Whinney.

Sharfman, Shanman, Poret & Siviglia, P.C., New York City (Alan D. Handler, of counsel), for defendant and third-party plaintiff Walter Taibleson.

Milbank, Tweed, Hadley & McCloy, New York City (Joseph S. Genova, Richard Jones, of counsel) and Perkins Coie, Seattle, Wash. (Ronald L. Berenstain, of counsel), for defendant and third-party plaintiff Frank B. Lynott.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City (John M. Friedman, Rolan M. Bissell, of counsel), for defendant and third-party plaintiff Charles B. Hall.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Lewis A. Kaplan, Mary Crowley, of counsel), for defendants and third-party plaintiffs Karel Wahrsager and Hugh Knowlton, Jr., in their representative capacities as executors of the Estate of Sigmund Wahrsager.

Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City (Robin Kaufman, of counsel), and Shulkin, Hutton & Bucknell, Seattle, Wash. (James S. Munn, of counsel), for defendants and third-party plaintiffs Lowe, Fox and Williams.

Mudge, Rose, Guthrie, Alexander & Ferdon, New York City (Douglas M. Parker, Robert Sidorski, of counsel), and Hallmark, Griffith & Keating, P.C., Portland, Or. (William A. Davis, of counsel), for defendant and third-party plaintiff Ralph M. Davis.

Richenthal, Birnbaum & Beck, P.C., New York City (Stuart J. Beck, of counsel), for third-party defendants Machinist and Stanfield.

## OPINION

ROBERT L. CARTER, District Judge.

On November 6, 1986, the court denied motions by each of the defendants under Rules 9(b) and 12(b)(6), F.R.Civ.P., to dismiss Counts I and II of the complaint for failure to plead fraud with the requisite particularity and for failure to state a claim upon which relief can be granted. *Bozsi Ltd. Partnership v. Lynott,* No. 86 Civ. 2997 (RLC), slip. op. (S.D.N.Y. filed Nov. 12, 1986) (Carter, J.) ["November 12 opinion"]. Two of the defendants, Price Waterhouse & Co. and Ernst & Whinney, now urge the court, pursuant to Civil Rule 3(j), Local Rules for the United States District Courts for the Southern and Eastern Districts of New York, to grant reargument of their motions. In addition, Robert B. Machinist and Michael R. Stanfield, recently named as third-party defendants to this action, urge the court to dismiss the third-party complaint against them.

## BACKGROUND

This suit was filed on April 14, 1986, by eighteen individual and institutional investors who purchased over six million shares of common stock in Tacoma Boatbuilding Company ["Tacoma Boat" or "the company"]. Tacoma Boat is a Washington corporation that designs, builds, and repairs medium-sized ships for the United States Navy, the United States Coast Guard, foreign governments, and commercial customers. Complaint, ¶ 12. The plaintiffs contend that in November and December, 1984, they met with members of Tacoma Boat management to discuss the possibility of investing in the company. *Id.,* ¶ 18. In January, 1985, a group of investors, including the plaintiffs and Midland Capital Corporation ["Midland Capital"], entered into a Stock Purchase Agreement under which the plaintiffs invested over $12.5 million in Tacoma Boat common stock. *Id.* Tacoma Boat filed for bankruptcy in September, 1985. *Id.,* ¶ 6. The plaintiffs now contend that they were deceived by the defendants as to the true financial condition of the company, and remained deceived until April 15, 1985, when the company released its 1984 Form 10–K Report revealing a $48 million net loss. *Id.,* ¶ 23.

The eight individual defendants are for-

mer officers or directors of Tacoma Boat.[1] The two corporate defendants, Price Waterhouse and Ernst & Whinney, are accounting firms that performed audits and certified financial statements for Tacoma Boat.[2] Each defendant is charged with violating Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) ["Section 12(2)"]; Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) ["Section 10(b)"]; and Rule 10b–5, 17 C.F.R. § 240.10b–5 ["Rule 10b–5"]. Moreover, each defendant is alleged to have committed various state-law violations.[3]

The plaintiffs allege that they were furnished a September, 1984 Confidential Memorandum and a December, 1984 Supplement that contained false and misleading information about the company's financial condition. Complaint, ¶¶ 30–31. These reports were allegedly "prospectuses" within the meaning of Section 12(2). *Id.*, ¶ 30. The plaintiffs further allege that reports issued by Price Waterhouse and Ernst & Whinney concerning the compa-

ny's finances were materially false and misleading. *Id.*, ¶¶ 39, 44.

In its November 12 opinion, the court held that the Section 12(2) claims were sufficient to withstand motions to dismiss. Rule 9(b), F.R.Civ.P., was held inapplicable on the ground that Section 12(2) allegations are averments of negligence, not of fraud. With respect to the Section 10(b) and Rule 10b–5 claims, the court found that Rule 9(b), F.R.Civ.P., requirements of specificity had been met. The defendants' motions to dismiss pursuant to Rules 12(b)(6) and 9(b), F.R.Civ.P., were denied.

## I. MOTIONS FOR RECONSIDERATION

Price Waterhouse and Ernst & Whinney argue that recent case law not previously put before the court by either party, and in fact handed down after the parties had fully briefed their motions to dismiss,[4] requires the court to amend its previous opinion.[5]

1. The individual defendants are Frank B. Lynott, Director and Chairman of the Board of Tacoma Boat; B. James Lowe, Director, President, and Chief Executive Officer of Tacoma Boat; Sigmund Wahrsager, Director until November 12, 1984 (the claim is directed against his estate); Ralph M. Davis, Director; Walter B. Taibleson, Director; Kenneth Fox, Senior Vice-President, Planning and Engineering; Charles B. Hall, Senior Vice-President, Finance, Chief Financial Officer, and Secretary; and Paul V. Williams, Vice-President, Production. Complaint, ¶¶ 7, 8.

2. The complaint alleges that Price Waterhouse was an independent auditor for Tacoma Boat until January 24, 1985, and certified the company's financial statements for the year ended December 31, 1983. Complaint, ¶ 10. Ernst & Whinney allegedly was hired by Midland Capital to evaluate the company before Midland and the plaintiffs purchased the stock. *Id.*, ¶¶ 11, 20. Thereafter, Ernst & Whinney allegedly served as Tacoma Boat's independent auditors and certified its financial statements for the year ended December 31, 1984. *Id.*, ¶ 11.

3. The pendent state-law claims allege violations of the Securities Act of Washington, Wash.Rev. Code § 21.20.010 (Count III); common-law fraud and deceit (Count IV); and common-law negligent misrepresentation (Count V).

4. The parties had fully briefed their motions to dismiss by September 12, 1986. The authority

cited by the moving parties in support of their Local Rule 3(j) motions, *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749 (2d Cir.1986), was decided on October 10, 1986.

5. The notices of motion for reargument and adequate supporting memoranda were filed within ten days of the docketing of the original opinion, as required by Local Rule 3(j). The plaintiffs argue, however, that Price Waterhouse and Ernst & Whinney violated Rule 3(j)'s additional requirement that the notices and memoranda be served "at least the same number of days before the return day as was required for the original motion." Local Rule 3(j); *see* Meyer Letter to Court, December 3, 1986.

Under Local Civil Rule 3(c)(2), the original notices and memoranda were to be served at least ten days before the return day. The return day on the motion for reargument was December 5, 1986. The papers were served on November 26, 1986. Excluding weekends and Thanksgiving Day, pursuant to Rule 6(a), F.R.Civ.P., the papers were served only six days before the return day, in violation of Rule 3(j).

This breach is not fatal to the motions. Motions for reargument have been denied on the ground that notice was served more than ten days after the original opinion was docketed. *E.g., Blanco v. United States*, 775 F.2d 53, 55–56 (2d Cir.1985); *Boyle v. Revici*, No. 83 Civ. 8997, slip op. (S.D.N.Y. Aug. 18, 1987) (Lowe, J.); *Pagluica v. Scully*, No. 80 Civ. 277 (CSH), slip op. (S.D.N.Y. Feb. 22, 1984) (Haight, J.); *Com-*

"A request for reargument is not an occasion to reassert arguments previously raised, but dismissed by the court." *Morgan Guar. Trust Co. of New York v. Garrett Corp.*, 625 F.Supp. 752, 756 (S.D.N.Y. 1986) (Goettel, J.). In order to prevail, the moving parties "must demonstrate that the court has overlooked controlling decisions or factual matters" that properly bore on the original opinion and that might reasonably be expected to have altered the outcome had they been considered at the time of decision. *Ashley Meadows Farm v. Am. Horse Shows Ass'n*, 624 F.Supp. 856, 857 (S.D.N.Y.1985) (Sweet, J.). The standard to be applied to Rule 3(j) motions was enunciated by Judge Edelstein in the following terms:

> The strong interests in finality and the procedural directions of Local General Rule 9(m) [Rule 3(j)'s predecessor] lead this court to conclude that the only proper ground for a motion for reargument is that the court has overlooked "matters or controlling decisions" which, had they been considered, might reasonably have altered the result reached by the court.

*United States v. Int'l Business Machines Corp.*, 79 F.R.D. 412, 414 (S.D.N.Y.1978) (Edelstein, J.) (footnotes omitted). This standard has been widely acknowledged and applied. *E.g., United States v. Payden*, 623 F.Supp. 1148, 1152 n. 9 (S.D.N.Y. 1985) (Edelstein, J.); *Wm. Passalucqua Bldrs., Inc. v. Resnick Developers South, Inc.*, 611 F.Supp. 281, 283 (S.D.N.Y.1985)

(Caffrey, J.); *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 409, 420 (S.D.N.Y.1979) (Lasker, J.).

The substantive basis for the instant motions is *Mayer v. Oil Field Systems Corp.*, 803 F.2d 749 (2d Cir.1986), in which the Court of Appeals stated the following:

> It is well-established that in order to prove a Section 10(b) claim, the plaintiff must prove the defendant's scienter. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 [96 S.Ct. 1375, 47 L.Ed.2d 668] (1976). Similarly, when, as is true here, the person who made the misrepresentation is not the immediate and direct seller of the securities, the imposition of liability on him, under Section 12(2) as a participant, aider and abettor, or coconspirator also requires proof of scienter.

*Id.* at 756 (citations omitted). Price Waterhouse and Ernst & Whinney argue that *Mayer* renders scienter a requisite element of a Section 12(2) violation in this case as to them; that the particularity requirements of Rule 9(b), F.R.Civ.P., must therefore be met; and that the November 12 opinion to the contrary is at odds with *Mayer*.

*Mayer* establishes the requirement that scienter be alleged against any defendant charged with a Section 12(2) violation who is not also alleged to have been the "immediate and direct seller" [6] of the securities at issue. The plaintiffs argue, and correctly so, that the definition of "seller" under Section 12(2) has been expanded to encompass some third-party participants in a sale.

mercial *Union Ins. Co. v. Hawaiian Holidays, Inc.*, No. 80 Civ. 6668 (RWS) (S.D.N.Y. July 8, 1982) (Sweet, J.). A thorough search of law within this Circuit, however, reveals no case in which a motion for reargument was denied because service was rendered too close to the return day.

The plaintiffs did not request additional time to respond to these motions. Nor do they now claim that their response by letter inadequately states their position. Under the circumstances, therefore, the foregoing violation of Rule 3(j) is not prejudicial and may be overlooked.

**6.** The Court of Appeals does not define the phrase "immediate and direct seller." *Mayer*, 803 F.2d at 756. Its citations, however, indicate that an "immediate and direct seller" is one who is in privity with the purchaser. *See, e.g., Lanza v. Drexel & Co.*, 479 F.2d 1277, 1298–1299 (2d Cir.1973) (Section 12(2) requires privity, or, in

the absence of privity, scienter). Although privity has been given a broad definition on occasion, *see, e.g., In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 666 F.Supp. 547, 566 (S.D.N.Y.1987) (Brieant, C.J.), an extension of the scienter requirement to all participants in a sale would seem to render meaningless the limiting phrase "immediate and direct seller." A reasonable reading of *Mayer* would require proof of scienter against all but the actual seller of securities. *See* III Loss, Securities Regulation 1716 (2d ed. 1961) ("seller proper" under Section 12(2) must prove his innocence, but plaintiff has the burden of proving participation and scienter against all others). *Id.* at 1719 (subject to some exceptions, Section 12 "contemplates only an action by a buyer against *his immediate seller*.") *See also* VI Loss, Securities Regulation 3836 (2d ed. Supp.1969).

*See, e.g., Pharo v. Smith*, 621 F.2d 656, 666–667 (5th Cir.1980). The phrase "immediate and direct seller," however, appears to be an intentional extension of the scienter requirement to parties other than the actual seller. In any event, neither Price Waterhouse nor Ernst & Whinney could be classified as an "immediate and direct seller" under even the most expansive definition of that phrase.[7]

A proper averment of scienter under Section 12(2) requires an allegation of knowing or reckless conduct in violation of the statute.[8] *Mayer*, 803 F.2d at 756 ("[s]cienter requires at least knowing misconduct"). The complaint in this case alleges that Price Waterhouse and Ernst & Whinney violated Section 12(2) "with knowledge of the wrongs alleged herein or in reckless disregard thereof." Complaint, ¶¶ 28, 29, 37, 38. A complaint must do more, however, than merely echo the terms of the scienter requirement. It must "allege facts from which an inference of . . . scienter may be drawn." *In re Union Carbide Corp. Consumer Products Business Securities Litigation*, 666 F.Supp. 547, 566 (S.D.N.Y.1987) (Brieant, C.J.).

■ The allegations of fact with respect to Price Waterhouse are merely that the defendant audited financial statements that were later furnished to the plaintiffs; that the defendant issued a financial opinion in April, 1984, allegedly prepared in accordance with generally accepted accounting standards; that that opinion asserted that the company's financial statements comported with generally accepted accounting principles; and that "a Price Waterhouse partner attended at least one meeting at which a presentation was made to plaintiffs to induce their purchases of Tacoma Boat stock." Complaint, ¶ 34; Plaintiffs' Memorandum at 6. None of these allegations, singly or in combination, provides a sufficient factual basis for an inference of a knowing or reckless violation of Section 12(2) by Price Waterhouse.

The only allegation that even arguably meets the scienter requirement—the alleged attendance of a Price Waterhouse partner at a pre-purchase meeting with the plaintiffs—is woefully devoid of those details that would provide the defendants with fair notice of the claims against them or that could support an inference of knowing or reckless misconduct. *In re Union Carbide*, 666 F.Supp. at 558. Nowhere is the date, time, place, or nature of the partner's participation, if any, described. Although allegations of knowledge and scienter may be "asserted in the most general fashion," *id.* at 559, the instant allegations fail even to "make clear that more than mere negligence" is involved. *Modern Settings v. Prudential–Bache Securities, Inc.*, 602 F.Supp. 511, 514 (S.D.N.Y.1984) (Carter, J.).

■ The allegations with respect to Ernst & Whinney are even less capable of sustaining an inference of scienter on its part. Ernst & Whinney is alleged to have performed a pre-sale review of Tacoma Boat's financial position and to have issued a report stating that the company was "in better condition than many other successful 'turn arounds' of recent years." Complaint, ¶ 20; Plaintiffs' Memorandum at 6. These allegations, even if proven, would fail to demonstrate a knowing or reckless violation of Section 12(2) by Ernst & Whinney. Accordingly, the Section 12(2) claims

---

**7.** The complaint alleges that each defendant violated Section 12(2) by offering or selling securities to the plaintiffs under prohibited conditions, or by substantially assisting in such offer or sale. Price Waterhouse and Ernst & Whinney are further charged with aiding and abetting. These allegations do not add up to an averment that the moving parties were "immediate and direct" sellers. See *supra* note 6.

**8.** "Persons participating directly in a violation of [Section 12(2) ] will not escape liability under the express language of the Act; similarly, those persons who are aware of and, to some lesser degree, participate in a violation of the securities laws and either enter into an agreement with or give assistance to the primary wrongdoers should not be permitted to escape the imposition of liability. . . . 'Such individuals will be subject to liability because they have acted knowingly or recklessly' to assist in such conduct or to be a part of a proscribed course of action." *In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 383 (S.D.N.Y.1973) (Weiner, J.) (footnote omitted).

against Price Waterhouse and Ernst & Whinney must be dismissed.[9]

Price Waterhouse and Ernst & Whinney also seek clarification of the status of the Section 10(b) and Rule 10b–5 claims against them. Both defendants are alleged to have committed primary and secondary violations of these provisions by knowingly or recklessly disregarding information showing that matters contained in the Tacoma Boat prospectuses and financial statements issued to the plaintiffs were false and misleading. Complaint, ¶ 51.

In its previous opinion, the court found that the complaint sufficiently stated the time, place, and content of the alleged misrepresentations and provided the defendants with fair notice of the nature of the plaintiffs' Section 10(b) and Rule 10b–5 claims. November 12 opinion at 2. The moving parties point out that the court did not explicitly address the additional requirement that Section 10(b) and Rule 10b–5 claims properly allege scienter. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

"Since *Ernst & Ernst v. Hochfelder* ..., it has been clear that an accountant's negligent misrepresentations is [sic] not sufficient to impose liability; the plaintiff must allege and prove 'scienter,' defined by the Court in *Hochfelder*, as 'intent to deceive, manipulate, or defraud.' " *Oleck v. Fischer* [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,898 (S.D.N.Y. June 8, 1979) (Haight, J.), *aff'd*, 623 F.2d 791 (2d Cir. 1980); *see Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). While the complaint makes no explicit allegations of scienter, recklessness is alleged, and in this Circuit "proof of reckless conduct will generally satisfy the requirement of scienter in a Section 10(b) claim." *In re Investors Funding Corp. of New York Securities Litigation*, 523 F.Supp. 550, 558 (S.D.N.Y.1980) (Conner, J.); *see Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 575

(2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *IIT, An Int'l Investment Trust v. Cornfeld*, 619 F.2d 909, 923 (2d Cir.1980).

For Section 10(b) purposes, "[r]eckless conduct is, at the least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.' " *Rolf v. Blyth, Eastman & Dillon Co., Inc.*, 570 F.2d at 47 (citation omitted). The allegations against Price Waterhouse and Ernst & Whinney meet this standard.

The complaint provides an adequate factual foundation for its allegation that Price Waterhouse and Ernst & Whinney acted recklessly in preparing and certifying financial statements concerning Tacoma Boat. The complaint alleges the following: that Tacoma Boat employed a percentage-of-completion method of accounting; that financial statements audited by Price Waterhouse for the year ended December 31, 1983, and included in the September, 1984 Confidential Memorandum provided to the plaintiffs put the company's net worth at $11 million and its outstanding receivables at $14 million; that financial statements audited by Ernst & Whinney for the year ended December 31, 1984, showed a negative net worth of $20.8 million and receivables worth only $23,000; and that the company's own 1984 Form 10–K Report revealed a net loss of approximately $48 million in 1984, reflecting in part a change in the percentage-of-completion method used, the write-off of certain receivables, and an upward revision of certain cost estimates. Thus, although generalized allegations of accounting errors do not satisfy the pleading requirements of Rule 9(b), F.R.Civ.P., *see Modern Settings v. Prudential–Bache Securities, Inc.*, 602 F.Supp. at 514, here the plaintiffs have properly averred reckless conduct. The Section 10(b) and Rule 10b–5 allegations against the moving parties are therefore sufficient.

---

**9.** Because the court finds the complaint deficient under Rule 9(b), F.R.Civ.P., there is no reason to consider its sufficiency under Rule 12(b)(6), F.R.Civ.P.

## II. MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

Also before the court is a motion by third-party defendants Robert Machinist and Michael Stanfield to dismiss the third-party complaint. The third-party plaintiffs are the individual defendants ["management defendants"] in this case. They allege that Machinist and Stanfield were managing directors and co-chief executive officers of Midland Capital, a venture-capital company that, along with the plaintiffs, invested heavily in Tacoma Boat in January, 1985. Machinist and Stanfield also are alleged to have been directors of Tacoma Boat from January, 1985, to the present and co-chairmen of its Board of Directors from April, 1985, to the present. Third-Party Complaint, ¶ 14.

In its description of key events, the complaint makes little mention of Midland Capital. The third-party complaint purports to fill in the details of Midland Capital's role.[10] Far from being another duped purchaser, the third-party plaintiffs allege, Midland Capital, acting through its agents Machinist and Stanfield, organized the January, 1985 stock purchase in order to effectuate a potentially profitable take-over of Tacoma Boat.[11] Acting as intermediaries between Tacoma Boat management and the plaintiffs, Machinist and Stanfield allegedly became "sellers" of Tacoma Boat stock and thus became liable to the plaintiffs for their losses.

The third-party complaint advances three theories of liability against Machinist and Stanfield.[12] Count I alleges that they compiled and disseminated the documents on which the plaintiffs relied in investing in Tacoma Boat. Third-party Complaint, ¶¶ 26, 29. Count II alleges that Midland Capital failed to investigate the company's finances adequately, and that the plaintiffs unwittingly relied on the third-party defendants' misrepresentations to the contrary when they invested in the company. Id., ¶¶ 36, 38. Count III alleges that the management defendants themselves relied on such misrepresentations when they authorized the stock sale to the plaintiffs. Id., ¶ 43.

In essence, the management defendants claim that "if plaintiffs were misled as to Tacoma Boat's finances, it was because Stanfield and Machinist, who knew all there was to know about Tacoma Boat after conducting a thorough investigation, either misstated or omitted material information in their solicitation of plaintiffs' support of Midland Capital's takeover [of the company]." Third-Party Plaintiffs' Memorandum at 3. Therefore, the management defendants claim, they are not liable to the plaintiffs for any federal or state-law violations, and, should they be required to pay damages under any claim, they are entitled to contribution from Machinist and Stanfield. Third-Party Complaint, ¶¶ 30–31, 38–39, 44–45.

Machinist and Stanfield move to dismiss the third-party complaint pursuant to Rules 12(b)(1), 12(b)(6) and 9(b), F.R.Civ.P., and, in the alternative, for a redesignation of the third-party complaint as an affirmative defense. Rule 8(c), F.R.Civ.P.

### A. RULE 12(b)(6) MOTION

Machinist and Stanfield appear to concede that every requisite element of a Section 12(2) violation has been properly plead-

---

10. For example, the third-party plaintiffs argue that the complaint says merely that the plaintiffs "were furnished" a Confidential Memorandum containing information provided by Tacoma Boat. Complaint, ¶ 19. They claim to provide the missing detail by alleging that it was Machinist and Stanfield who compiled the information that was supplied to the plaintiffs. Third-Party Complaint, ¶¶ 25, 26.

11. The third-party plaintiffs leave the impression that Midland Capital would have been named as a third-party defendant had it not filed for bankruptcy after its investment in Tacoma Boat turned sour. Third-Party Plaintiffs' Memorandum at 4.

12. The third-party plaintiffs allege that Machinist and Stanfield are liable to them under Section 12(2), Section 10(b), Rule 10b–5, and for violations of the Securities Act of Washington, Wash.Rev.Code § 21.20.010, common-law fraud, and common-law negligence. Third-Party Complaint, ¶ 30.

ed against them except one.[13] They assert that, as agents or "controlling persons" of the purchasers of Tacoma Boat stock, they cannot as a matter of law be held liable as sellers under Section 12(2).[14] Third–Party Defendants' Reply Memorandum at 8.

It is clear, however, as Machinist and Stanfield themselves concede, *see* Third–Party Defendants' Memorandum at 9, that the meaning of "seller" under Section 12(2) has been extended beyond immediate sellers or offerors of securities. Those who act as the immediate seller's agent, those who are "controlling persons" of the immediate seller, those who actively participated in the sale, either as aiders and abettors or as co-conspirators, or those under similar circumstances may be held liable under Section 12(2) as sellers. *See Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 913 (S.D.N.Y.1983) (Carter, J.); *De Bruin v. Andromeda Broadcasting Systems*, 465 F.Supp. 1276, 1280 (D.Nev. 1979); *Lorber v. Beebe*, 407 F.Supp. 279, 295–296 (S.D.N.Y.1976) (Knapp, J.).

In addition, a party "may be held accountable under Section 12(2) if its participation was a substantial factor in effecting the transaction." November 12 Opinion at 2 (citing *Pharo v. Smith*, 621 F.2d at 666–667). *E.g., Junker v. Crory*, 650 F.2d 1349, 1360 (5th Cir.1981) ("mere participation" in events leading up to transaction is not enough since participation must have been a "substantial factor in causing the transaction to take place"); *Lawler v. Gilliam*, 569 F.2d 1283, 1287–1288 (4th Cir.1978) (definition of seller includes "all persons whose actions are a substantial factor in causing a purchaser to buy a security"); *Hill York Corp. v. Am. Int'l Franchises, Inc.*, 448 F.2d 680, 692–693, 695 (5th Cir.

1971) (proper test is whether injury flows directly and proximately from the defendant's act); *Lazar v. Sadlier*, 622 F.Supp. 1248, 1251–1252 (C.D.Cal.1985) (rule for determining seller liability is one of "substantial participation" or "direct causal link"); *Adalman v. Baker, Watts & Co.*, 599 F.Supp. 749, 751 (D.Md.1984) (Section 12(2) liability extends to those "responsible for bringing about sales of securities they themselves do not own"), *aff'd in relevant part*, 807 F.2d 359 (4th Cir.1986).

The third-party complaint alleges that Machinist and Stanfield negotiated with Tacoma Boat on behalf of Midland Capital; were given full access to Tacoma Boat's books, records, and personnel in contemplation of the proposed investment; remained in constant contact with a Midland Capital vice-president, Edwin B. Hathaway, who maintained an office at Tacoma Boat from August to December, 1984; hired two accounting firms to investigate the company's finances; became intimately involved in managing the company's business and finances before the stock purchase took place; organized additional investors to join with Midland Capital in purchasing Tacoma Boat stock; compiled and distributed the September, 1984 Confidential Memorandum and its Supplement; and represented to the plaintiffs and to the management defendants that Midland Capital had thoroughly investigated Tacoma Boat's finances. Third–Party Complaint, ¶¶ 18, 20–23, 26, 29, 33, 41. Those allegations, if proven, would support a finding that Machinist and Stanfield became "sellers" within the meaning of Section 12(2) by substantially contributing to the realization of the stock-purchase transaction.[15]

---

**13.** They argue that "[s]ince the complaint fails to assert the elements necessary to bring Stanfield and Machinist within the definition of 'seller' under Section 12(2), the complaint fails to state a federal cause of action thereunder." Third–Party Defendants' Memorandum at 14–15.

**14.** In support of its motion to dismiss, Ernst & Whinney, like the third-party defendants, argued that as a matter of law it could not be held liable under Section 12(2) because it was an agent of a purchaser. Ernst & Whinney Memo-

randum at 8–12. The court rejected that argument as to Ernst & Whinney, November 12 opinion at 2, and it rejects it now as to Stanfield and Machinist.

**15.** Comparable allegations have been found sufficient under Section 12(2). *See Junker v. Crory*, 650 F.2d 1349, 1360 (5th Cir.1981) (attorney who suggested merger, prepared merger documents, and was an "active negotiator" in stock-sale transaction fell within reach of Section 12(2)); *Lawler v. Gilliam*, 569 F.2d 1283, 1288 (4th Cir.1978) (defendants who solicited invest-

The third-party defendants argue, however, that even if the third-party complaint properly alleges that they substantially participated in the sale, it still fails to properly aver aiding-and-abetting liability on their part. It is well-established that there are three elements of aiding-and-abetting liability: "(1) the existence of a securities law violation by a primary wrongdoer; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the violation." *Klein v. Computer Devices, Inc.*, 602 F.Supp. 837, 841 n. 8 (S.D.N.Y. 1985) (Goettel, J.); *Klein v. Computer Devices, Inc.*, 591 F.Supp. 270, 280 (S.D.N.Y. 1984) (Goettel, J.) (citations omitted). The third-party complaint adequately points to the existence of a Section 12(2) violation by primary wrongdoers. Third–Party Complaint, ¶¶ 30–31, 39, 44–45. It adequately alleges scienter on the part of Machinist and Stanfield by describing their conduct as willful, knowing, or reckless, *see id,* ¶¶ 29, 38, 45, and by providing a sufficient factual basis to support an inference that these allegations are true. *Id.,* ¶¶ 18, 20–22, 26, 29, 33, 41. Finally, the third-party complaint adequately alleges substantial assistance. *E.g., id.,* ¶¶ 18–23, 26.

■ Machinist and Stanfield assert that the complaint against them is nonetheless defective because its assertion that they "actively participated in aiding and abetting a primary fraud directed at their own company's purchase of the Tacoma securities," Third–Party Defendants' Memorandum at 11, is counterintuitive. The issue upon a motion to dismiss, however, is not whether the plaintiffs' account is plausible or implausible; the issue is whether the complaint is legally sufficient. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683,

1686, 40 L.Ed.2d 474 (1974) (at this stage of the proceedings, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). The "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *see First Fed. Sav. & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.,* 634 F.Supp. 1341, 1353 (S.D.N.Y.1986) (Lasker, J.). Such is not the case here.

Because the third-party complaint alleges facts that, if proven, would bring the third-party defendants within reach of the seller-liability provisions of Section 12(2), the motion to dismiss the third-party complaint under Rule 12(b)(6), F.R.Civ.P., is denied.

## B. RULE 9(b) MOTION

■ Machinist and Stanfield argue that each Count of the third-party complaint must be dismissed for failure to plead fraud with sufficient particularity as required by Rule 9(b), F.R.Civ.P.[16] "Rule 9(b) requires plaintiff[s] to plead facts giving rise to an inference of fraud and to state these facts with sufficient particularity, to apprise defendants of the misconduct complained of and to enable them to prepare a defense." *Somerville v. Major Exploration, Inc.,* 576 F.Supp. at 908–909.

The particularity requirements of Rule 9(b) are satisfied if the complaint

> adequately specified the statements it claimed were false or deceptively incomplete; ... gave particulars as to the respect in which the plaintiff[s] contended the statements were fraudulent; ... de-

ments in anticipation of a share in the profits and whose activity was a substantial factor in causing others to invest could be "sellers"); *Adalman v. Baker, Watts & Co.,* 599 F.Supp. 749, 751–752 (D.Md.1984) (company was "seller" that was exclusive agent for finding subscribers and other dealers and that organized entire offering). *Cf. Croy v. Campbell,* 624 F.2d 709, 713–714 (5th Cir.1980) (attorney who made no representations concerning investment, who did not attempt to solicit plaintiffs to invest, and whose

involvement did not "proximately cause" them to invest could not be liable under Section 12(2)).

16. Rule 9(b), F.R.Civ.P., states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

tailed the time and place at which the statements were made; and ... identified the defendants charged with having made those statements, either directly or as controlling persons or aiders and abettors. *Goldman v. Belden*, 754 F.2d 1059, 1069–1070 (2d Cir.1985). There is no requirement that "detailed evidentiary matter" be pleaded. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed. 2d 802 (1980). Allegations of scienter, in particular, may be made in general terms. Rule 9(b), F.R.Civ.P.; *Goldman*, 754 F.2d at 1070. Nonetheless, the defendants must be given adequate notice of the claims against them. Such notice must include factual allegations which, if proven, would support an inference of the misconduct that is alleged. *Somerville*, 576 F.Supp. at 910.

■ When measured against the special pleading requirements of Rule 9(b), the third-party complaint is sufficient. The third-party complaint may be read in conjunction with the original pleadings. It states a claim for contribution. Its allegations are therefore necessarily intertwined with those of the complaint. *See Fed. Dep. Ins. Corp. v. Nat'l Surety Corp.*, 434 F.Supp. 61, 64 (E.D.N.Y.1977). Indeed, the third-party complaint purports to fill in key gaps within the complaint, *see* Third–Party Plaintiffs' Memorandum at 9, and it explicitly incorporates by reference portions of the complaint. Third–Party Complaint, ¶¶ 24, 25, 28–30. Therefore, the question before the court is whether the allegations contained in both pleadings are sufficient to satisfy Rule 9(b), F.R.Civ.P.

■ Read together, the first- and third-party complaints contend with adequate particularity that Machinist and Stanfield put together a group of investors that included the plaintiffs; acted as the group's agents; represented that Midland Capital had investigated Tacoma Boat's finances thoroughly; misrepresented or omitted material facts concerning the company's finances to the plaintiffs and to the third-party plaintiffs, both through written reports and oral representations; and did all of the

above with the hope of effecting a "turn around" of the company and reaping large profits. Each of these contentions is supported by detailed factual allegations. The third-party plaintiffs have alleged "time, place, and content of the alleged misrepresentations." November 12 Opinion at 2; *see* discussion *supra*. Their allegations are adequate to support an inference of scienter on the part of Machinist and Stanfield.

In sum, "either of the third-party defendants, by inspecting *all the pleadings*, can ascertain with sufficient clarity what is alleged against him.... [S]ince the subject matter of the fraud has been alleged with particularity by plaintiff[s], [Machinist and Stanfield] need[ ] no greater specificity to defend [themselves] against these claims." *Omega–Alpha, Inc. v. Touche Ross & Co.*, [1976] Fed.Sec.L.Rep. (CCH) ¶ 95, 663 at 90 (S.D.N.Y. July 9, 1976) [Available on WESTLAW, 1976 WL 809] (Carter, J.) (emphasis added); *but see Fed. Dep. Ins. Corp.*, 434 F.Supp. at 64. Therefore, the Rule 9(b) motion by Machinist and Stanfield is denied.

## C. RULE 8(c) MOTION

Finally, Machinist and Stanfield move pursuant to Rule 8(c), F.R.Civ.P., for a redesignation of the third-party complaint as an affirmative defense and a dismissal of the third-party complaint with prejudice.

Rule 8(c), F.R.Civ.P., provides in pertinent part that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Citing this language, Machinist and Stanfield argue that the third-party complaint is in reality nothing more than an affirmative defense to the plaintiffs' claims against the management defendants. They reason that if the management defendants successfully prove that they "made full, complete and honest disclosure of Tacoma Boat's true financial condition to [the] plaintiffs' authorized agents," Machinist and Stanfield, then they will have precluded the possibility of their own liability to the plaintiffs. "The right

to contribution from Stanfield and Machinist [therefore] is not a relevant inquiry." Third–Party Defendants' Memorandum at 28.

 This argument is without merit. The third-party defendants have presented neither authority nor analysis in support of their contention that Rule 8(c), which refers to counterclaims, may be read to include third-party complaints as well. Redesignating a third-party complaint does not merely correct a technical pleading error. It alters the essential character of a case by eliminating a party to the proceedings. The redesignation of a counterclaim or a defense does not have this same effect. To read Rule 8(c) to encompass third-party complaints would exceed the Rule's purpose, which is to allow a court to ignore improper designations in order to interpret a pleading in accordance with its true character. *See* Moore & Lucas, Moore's Federal Practice ¶ 8.27[3] (2d ed. 1984) ("An improper designation is not fatal; and the court may treat a designated defense as a counterclaim or a counterclaim as a defense"); 61A Am.Jur.2d Pleading § 123 (1981) ("Mistakes in designation of a defense are generally overlooked"); 5 Wright & Miller, Federal Practice and Procedure § 1275 (1969) ("The misdesignation provision in Rule 8(c) reflects the conscious attempt of the draftsman to ignore pleading technicalities").

 Even if Rule 8(c) were properly read to cover third-party complaints, there is no reason to conclude that the third-party plaintiffs in this case "mistakenly" designated their affirmative defense as a third-party complaint. The third-party complaint properly states a claim for contribution. Even if it operates in part as an affirmative defense, that fact does not alter its essential character as a claim for contribution. The motion pursuant to Rule 8(c), F.R.Civ.P., is therefore denied.

## CONCLUSION

For the reasons stated above, the Local Rule 3(j) motions by defendants Price Waterhouse and Ernst & Whinney for reargument are granted, and upon reargument the court dismisses those portions of the complaint that allege Section 12(2) violations against Price Waterhouse and Ernst & Whinney. The plaintiffs are given leave to amend their complaint within thirty days of the date this opinion is filed.[17] The Section 10(b) and Rule 10b–5 claims against Price Waterhouse and Ernst & Whinney are deemed sufficient to withstand a motion to dismiss.

The motions by Machinist and Stanfield to dismiss the third-party complaint pursuant to Rules 12(b)(6), 9(b), and 8(c), F.R. Civ.P., are denied. Because the federal claims of the third-party complaint have not been dismissed, the court retains jurisdiction over the pendent state-law claims as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk*, 604 F.Supp. 1084, 1096 (E.D.N.Y.1985) *aff'd*, 813 F.2d 570 (2d Cir.1987) (per curiam). Accordingly, the motion to dismiss the third-party complaint for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), F.R.Civ.P., is denied.

IT IS SO ORDERED.

---

17. Leave to amend should be freely granted. *See* Rule 15(a), F.R.Civ.P.; *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). "Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986) (citation omitted). Although there are some recognized exceptions to this rule, none is present here. *See id; Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987) (exception arises, for example, when plaintiff has already been granted prior opportunity to replead with greater specificity).